STATE HIGHWAY COMMISSION, Appellant v.
ANDERSON et al., Respondents

(242 N.W.2d 674)

(File No. 11753. Opinion filed May 25, 1976)

Carl W. Quist and Gary F. Colwill, Asst. Attys. Gen., Pierre, for plaintiff and appellant; William J. Janklow, Atty. Gen., Pierre, on the brief.

William J. Holland, Holland & Brantseg, Sisseton, Vernon M. Johnson, Johnson, Milloy & Johnson, Wahpeton, N.D., for defendants and respondents.

DUNN, Chief Justice.

This is a condemnation action. The land involved is situated in Roberts County, South Dakota, and was condemned for the construction of U.S. Interstate Highway 29. Defendants own 400 acres of land which was determined to be the unit for purposes of the condemnation action. The land contains improvements. Of the 400 acres, 27.60 acres were taken by condemnation. Since 2.21 acres were previously section line right-of-way, the net taking amounted to 25.39 acres. In addition 3.43 acres were temporarily taken by a construction easement. Due to the nature of the condemnation, the unit suffered severance damages, although the separated land will be joined by a road which will run beneath the completed Interstate Highway.

The jury returned a verdict for defendants in the amount of $25,000. Judgment for that amount was entered by the court. Plaintiff subsequently moved for a new trial. That motion was denied on September 2, 1975. Plaintiff appeals from the whole of the judgment and the order denying a new trial. We reverse and remand for a new trial.

The plaintiff State Highway Commission filed its declaration of taking June 21, 1973. Trial to a jury to determine just compen-

sation was held on April 1, 1975. The plaintiff called two land appraisers to the stand. The court allowed them to give their opinions as to the damages resulting from the taking, but would not allow them to testify as to specific sales of land which they had examined and relied upon in making their computations. Defendant, Arthur Anderson, and his son Kenneth took the stand and gave their opinions as to the value of the property and the damages sustained by the taking. Defendants also called two expert appraisers for their opinions. Plaintiff's appraisers' estimates of the total damages were significantly lower than those of defendants' witnesses.

The principal issue raised by plaintiff is that the court erred in ruling during the trial that evidence of comparable sales of real estate in the area was inadmissible as a matter of law. Plaintiff contends that the evidence of comparable sales was not being introduced as substantive evidence, but, rather, was to establish foundation for the computations of its expert appraisers, Meisner and Felker.

■ While not all of the jurisdictions so hold, the majority allows evidence of comparable sales to be introduced into evidence, (1) as substantive proof of the value of the property to which the comparison relates, and (2) to give an account of the factual basis upon which the expert founds his opinion on the issue of the value of the real estate in controversy. See 5 Nichols on Eminent Domain, § 21.3. South Dakota has consistently followed the majority rule that sales, if they are in fact comparable, are admissible for the above stated purposes. Tidball v. Miller, 1948, 72 S.D. 243, 32 N.W.2d 683; State Highway Commission v. Lacey, 1962, 79 S.D. 451, 113 N.W.2d 50; Nystrom v. State, 1962, 80 S.D. 58, 119 N.W.2d 123; and State Highway Commission v. Hayes Estate, 1966, 82 S.D. 27, 140 N.W.2d 680.

In this regard, the provisions of SDCL 19-6-12 and 19-6-13 are pertinent:

> "19-6-12. An expert witness may be asked to state his inferences, whether these inferences are based on the witness' personal observation, or on evidence in-

troduced at the trial and seen or heard by the witness, or on his technical knowledge of the subject, without first specifying hypothetically in the question the data on which these inferences are based."

"19-6-13. An expert witness may be required, on direct or cross-examination, to specify the data on which his inferences are based."

In Hayes Estate, supra, we held that when evidence of comparable sales is introduced for purposes of foundation of expert testimony only, the rule of comparability is not nearly as strict as when the sales are offered as substantive evidence of the value of the real property in question. See also 5 Nichols on Eminent Domain, § 21.3[2], at page 21-50.

In Lacey, Nystrom, and again in Hayes Estate, all supra, we held that whether this evidence should be admitted or excluded rests largely within the discretion of the trial court and the trial court's ruling will not be disturbed unless there clearly appears to be an abuse of that discretion. Therefore, our inquiry centers on the comparability of the land sold with the condemned land of the defendants and whether there was an abuse of discretion in refusing this evidence.

Plaintiff's witness Meisner testified that he studied thirty sales of farm real estate in the area and found three to be particularly helpful. He was not allowed to testify further about the sales in the presence of the jury, but an offer of proof was made in the judge's chambers. Meisner would have testified about the following sales:

| GRANTOR-GRANTEE | DATE | SIZE | IMPROVE-MENTS | DISTANCE FROM CONDEMNED PROPERTY | PRICE PER ACRE |
|---|---|---|---|---|---|
| Dystra-Brenberger | 10-73 | 160 A. | No | 8 miles | $ 318.75 |
| Lenz Estate-Pohl | 2-73 | 160 A. | No | adjacent | $ 127.00 |
| Victor-Lubke | 5-73 | 160 A. | Yes | 14 miles | $ 200.00 |

Witness Felker testified that he examined some sixty-five land sales in Roberts County and in North Dakota while working on his appraisal. In the offer of proof he testified to two helpful sales:

| GRANTOR-GRANTEE | DATE | SIZE | IMPROVE-MENTS | DISTANCE FROM CONDEMNED PROPERTY | PRICE PER ACRE |
|---|---|---|---|---|---|
| Janes Estate-Widhalms | 2-74 | 400 A. | Yes | 18 miles | $ 275.00 |
| Pirmantgen-Widhalms | 1-74 | 160 A. | No | 9 miles | $ 212.00 |

■ We decline to rule on whether these sales were comparable for purposes of substantive evidence going to the price of the condemned land. What we do hold is that they were suitably comparable in time of sale, location, and soil conditions to be introduced into evidence for foundational purposes. Plaintiff and its experts made no representations that any of the land sold was identical to the land of defendants. On the contrary, they recognized the differences in each piece of land and were prepared to tell the jury how they adjusted the selling price of each piece of land upward or downward based upon these variables in arriving at their respective appraisals of defendants' land and the total damages sustained by the condemnation. This included an adjustment for inflation of land values from the date of the sale, which the expert proposed to use in explaining his valuation, to the date of the taking of subject land. We feel that this information is essential to a jury in arriving at its verdict. Other factors not comparable would go to the weight rather than the admissibility of this evidence. Defendants would have the opportunity to cross-examine the expert to bring out all of the variables—as was aptly shown by the cross-examination on the offer of proof in chambers. See SDCL 19-6-13, supra.

■ Unlike other civil actions, condemnation cases largely involve the subjective opinions of experts rather than the objective observations of lay witnesses. The admission of testimony of the experts as to value before and after the taking, without being able to explain their valuations in the light of comparable sales, renders a real injustice to the plaintiff as the naked valuations of an out-of-town expert would not aid and would probably do harm in the minds of a jury. In this battle of experts, the jury must test not only the credibility of each witness but also his qualifications as an expert and the precise method by which he arrived at an ultimate conclusion or opinion. It is therefore crucial that each side be allowed to introduce evidence to show that its particular witness used all available methods in making his appraisal. That is especially true in this case where there was a disparity of between $8,000 and $10,000 in the damage estimates of plaintiff's expert witnesses and defendants' expert witnesses. In view of

this, we hold that the plaintiff was prejudiced and that the trial court abused its discretion in ruling this evidence inadmissible as a matter of law.

■ Defendants observe in their brief that plaintiff's experts gained their information about the sales and price per acre by talking to the buyer of the land in each case. Defendants' argue that since neither the buyer nor seller in each instance testified in court as to the selling price the evidence is hearsay and is therefore inadmissible. We cannot agree. We follow the rule that evidence of price in comparable sales given by an expert witness in a condemnation case is an exception to the hearsay rule. As was stated in United States v. 5139.5 Acres of Land, Etc., 1952, 4 Cir., 200 F.2d 659, 662: "The hearsay and best evidence rules are important, but they should not be applied to prevent an expert witness giving in a reasonable way the basis of his opinions." See also United States v. 18.46 Acres of Land, Etc., 1963, 2 Cir., 312 F.2d 287.

Plaintiff raises one additional point on appeal. It seems that during the trial of the case one of the jurors was arrested for an alcohol related offense by the Bureau of Indian Affairs Police and was lodged in the Roberts County jail. He was taken from the jail to sit on the jury and was returned to jail after the jury's deliberations. Plaintiff's counsel apparently did not find out about this fact until after the trial was over. The incarceration of the juror became one of the grounds in plaintiff's motion for a new trial and was assigned as error on the appeal. Plaintiff claims that the court should have told counsel about the juror's incarceration. It is argued that this particular juror would not have felt too kindly to plaintiff State of South Dakota in this condemnation action having just spent the night in one of its county jails. This claim of the plaintiff might have been well taken if it had been established that the court knew of this incident during the trial, or that the defendants knew of it and failed to advise the court and plaintiff. The record does not reveal that the court or the parties knew of this unfortunate situation previous to the motion for a new trial. In any event, the issue has been rendered moot in view of our holding that the case must be retried.

The judgment and the order denying a new trial are reversed and the case is remanded for further proceedings.

WINANS and WOLLMAN and COLER, Justices, concur.